IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURIE SMITH, | No. C 09-02903 WHA |
| Plaintiff, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT AMERICAN AIRLINE, INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS AND VACATING HEARING** |
| AMERICAN AIRLINES, INC., and DOES 1–50, | |
| Defendants. | |

## INTRODUCTION

In this action for personal injuries allegedly sustained during an international flight, defendant American Airlines, Inc., moves for judgment on the pleadings on the following grounds:

1. The Montreal Convention preempts plaintiff's state law claims; and

2. Plaintiff's injury was not the product of an "accident," as required under Article 17(1) of the Montreal Convention.

For the following reasons, defendant's motion is **GRANTED IN PART AND DENIED IN PART**.

## STATEMENT

The facts alleged by plaintiff are simple. Plaintiff filed a California form complaint in California state court on May 26, 2009. On April 9, 2008, during an international American

1  Airlines flight from Miami International Airport in Florida to St. Kitts, Bahamas, a large bottle
2  of liquid fell from an overhead bin and struck her on the head thereby causing various injuries
3  (Compl. 4). The bottle fell as a result of defendant's "improper packing, improper checking of
4  overhead bin containers, and failure to secure overhead bin containers for flight" (*ibid.*).
5  Plaintiff alleges state law claims for relief for general negligence and motor vehicle negligence
6  (*id.* at 4–5), and further states that defendant is liable under "Warsaw Contention [*sic*] Treaties,
7  49 Stat. 3000 (1934) et seq; 49 U.S.C. Section 40105 and as revised and adopted thereafter"
8  (*id*. at 5). The action was removed here based on federal-question and diversity jurisdiction
9  (Dkt. No. 1).

## ANALYSIS

A motion for judgment on the pleadings under FRCP 12(c) may be granted only "when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1989). We may not go beyond the pleadings to resolve any disputed issues when determining the outcome of the motion. Moreover, "[a]ll allegations of fact by the party opposing the motion are accepted as true, and are construed in the light most favorable to that party." *General Conference Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church*, 887 F.2d 228, 230 (9th Cir. 1989).[1]

---

[1] Unless otherwise indicated, all internal quotations and citations within quoted text in this order have been omitted.

2

### 1. THE MONTREAL CONVENTION.

The Montreal Convention is the culmination of numerous efforts by the United Nations to reform the Warsaw Convention.[2] The Warsaw Convention was negotiated in 1929 with the purpose of limiting liability and applying uniform liability rules to international air transport of passengers, cargo, and mail. The United States became a party to the Warsaw Convention in 1934. Talbot Letter at *3. But by 1999, seventy years of various treaties, agreements, and amendments had transformed the Warsaw Convention's system of liability into a confusing "hodgepodge of supplementary amendments and intercarrier agreements." *Ehrlich v. American Airlines, Inc.*, 360 F.3d 366, 371 n.4 (2d Cir. 2004). Thus, in May 1999, the Montreal Convention was negotiated and 52 countries, including the United States, signed the treaty. *Ibid.*

The Montreal Convention became effective in the United States on November 4, 2003. *In re Nigeria Charter Flights Contract Litigation*, 520 F. Supp. 2d 447, 452 (E.D.N.Y. 2007). The preamble to the Montreal Convention recognizes both "the need to modernize and consolidate the Warsaw Convention and related instruments" and "the importance of ensuring protection of the interests of consumers in international carriage by air and the need for equitable compensation based on the principle of restitution." Furthermore, both the Warsaw and Montreal Conventions stress the objective of "uniformity of rules governing claims arising from international air transportation." *El Al Israel Airlines, Ltd. v. Tseng*, 525 U.S. 155, 169 (1999); Talbot Letter at *9.

---

[2] The Montreal Convention is formally known as the Convention for Unification of Certain Rules for International Carriage by Air, Done at Montreal, May 28, 1999, S. Treaty Doc. No. 106-45, 1999 WL 33292734 (hereinafter Montreal Convention). The Warsaw Convention is formally known as the Convention for the Unification of Certain Rules Relating to International Travel by Air, Oct. 12, 1929, 49 Stat. 3000, 137 L.N.T.S. 11, 49 U.S.C. § 10105 note (hereinafter Warsaw Convention). The Montreal Convention, as referenced in this order, is not to be confused with the Montreal Protocol No. 4, an amendment to the Warsaw Convention that entered into force in the United States on March 4, 1999, and is formally known as Montreal Protocol No. 4 to Amend the Convention for the Unification of Certain Rules Relating to International Carriage By Air, signed at Warsaw on October 12, 1929, as amended by the Protocol Done at the Hague, September 8, 1955, S. Exec. Rep. No. 105-20 (hereinafter Montreal Protocol No. 4). *See also* Letter of Submittal of Strobe Talbott, June 23, 2000, S. Treaty Doc. No. 106-45, 1999 WL 33292734, at *6 (hereinafter Talbott Letter).

3

The Montreal Convention supersedes the Warsaw Convention entirely. *See Ehrlich*, 360 F.3d at 371 n.4; Talbot Letter at *7, 28; Montreal Convention art. 55. This is important because there are some notable differences between the two treaties. For example:

> Whereas the primary aim of the contracting parties to the [Warsaw] Convention was to limit the liability of air carriers . . . the contracting parties to the Montreal Convention expressly approved that treaty because, among other reasons, they recognized the importance of ensuring protection of the interests of consumers in international carriage by air and the need for equitable compensation based on the principle of restitution . . . Hence, commentators have described the Montreal Convention as a treaty that favors passengers rather than airlines.

*Ehrlich*, 360 F.3d at 371 n.4. Also, the legal standard regarding damages has changed:

> [T]he Montreal Convention imposes a new legal standard where the alleged damages meet a certain level. Under Article 21(2) of the Montreal Convention, the carrier is not liable for damages exceeding an amount equivalent to 100,000 Special Drawing Rights [SDR] if it can prove that the damage was not due to its own negligence.

*Kruger v. United Air Lines, Inc.*, 481 F. Supp. 2d 1005, 1008 (N.D. Cal. 2007).[3]

Nevertheless, most provisions of Montreal and Warsaw Conventions are substantially the same, and, as a result, the legal precedents developed under the Warsaw Convention still apply to the Montreal Convention. *See* Talbot Letter at *7, 16; *Seales v. Panamanian Aviation Co.*, No. 07-CV-2901, 2009 U.S. Dist. LEXIS 11855, at *24 n.8 (E.D.N.Y. Feb. 18, 2009).

### 2. PREEMPTION OF STATE LAW CLAIMS.

Defendant first contends that the Montreal Convention preempts all federal and state law claims that fall within its scope, thus plaintiff's state law tort claims for negligence are preempted and must be dismissed. Although both the Supreme Court and the Ninth Circuit have issued decisions regarding the preemptive effective of the Warsaw Convention, there is no binding case law addressing the preemptive effect of the Montreal Convention. Nevertheless, every district court decision on this issue has held that the Montreal Convention's preemptive effect is substantially the same as, if not identical to, that of the Warsaw Convention. *See*, *e.g.*, *Seales*,

---

[3] The Warsaw Convention also contained provisions limiting the air carrier's liability if the carrier could prove lack of negligence, but the standards for establishing entitlement to such a damage reduction differed. *See* Warsaw Convention art. 20-1.

4

2009 U.S. Dist. LEXIS 11855, at *22; *Jones v. USA 3000 Airlines*, No. 4:08-CV-1855, 2009 U.S. Dist. LEXIS 9049, at *8–9 (E.D. Mo. Feb. 9, 2009); *Knowlton v. American Airlines, Inc.*, No. RDB-06-854, 2007 U.S. Dist. LEXIS 6882, at *11 n.3 (D. Md. Jan. 31, 2007). This order, therefore, holds that the Montreal Convention preempts state law claims to the same effect as the Warsaw Convention.

The Supreme Court has tailored the scope of the Warsaw Convention's preemptive effect as follows:

> [A] passenger whose injury is not compensable under the [Warsaw] Convention (because it entails no "bodily injury" or was not the result of an "accident") will have no recourse to an alternate remedy. . . . We therefore hold that recovery for a personal injury suffered "on board [an] aircraft or in the course of any of the operations of embarking or disembarking," Art. 17, 49 Stat. 3018, if not allowed under the Convention, is not available at all . . . *The Convention's preemptive effect on local law extends no further than the Convention's own substantive scope.* A carrier, therefore, is indisputably subject to liability under local law for injuries arising outside of that scope: *e.g.*, for passenger injuries occurring before any of the operations of embarking or disembarking.

*Tseng*, 525 U.S. at 160, 172 (emphasis added).[4]

*Tseng* was clear that the Warsaw Convention preempts all state law claims for personal injuries that should fall under the Convention but *do not* for failure to prove "bodily injury" or "accident." But *Tseng* did not speak to whether the Warsaw Convention preempts state law claims for injuries that *do* appropriately fall within the text of the Convention. As a result, circuits have split over the proper interpretation of *Tseng* and its result on the Warsaw Convention's preemptive effect.[5] The Ninth Circuit follows the majority of circuits to hold that,

---

[4] Passages in defendant's motion confuse the Montreal Convention with Montreal Protocol No. 4 (*see* Br. 4–5). For clarification purposes, Montreal Protocol No. 4 was signed by the United States in September 1975, ratified in September 1998, and entered into force in the United States in March 1999. *See* Talbot Letter at *4, 6. In contrast, the Montreal Convention was not signed by the United States until *May 1999* and did not enter into force in the United States until *November 2003*. *See Ehrlich*, 360 F.3d at 371 n.4*; In re Nigeria Charter Flights*, 520 F. Supp. 2d at 452. The Supreme Court's January 1999 decision in *Tseng*, therefore, does not speak to the functioning of the Montreal Convention, except to the extent that Warsaw Convention precedent influences the application of the Montreal Convention.

[5] The Seventh Circuit is in the minority, holding that under *Tseng* the Warsaw Convention's preemptive effect is only *partial* and those state law claims that fall within the Convention's "substantive scope" are *not* preempted so long as they are consistent with the Convention's "own regulatory structure." *See, e.g.*, *Sompo Japan Insurance, Inc. v. Nippon Cargo Airlines Co.*, 522 F.3d 776, 781–5 (7th Cir. 2008) ("Article 24

5

under *Tseng*, the Warsaw Convention *completely* preempts *all* state tort law claims that fall within the Convention's "substantive scope."[6] Specifically, the Ninth Circuit has stated that:

> The *Tseng* Court framed the issue before it as whether the Warsaw Convention "provides the exclusive cause of action for injuries sustained during international air transportation." At the outset, the Court stated that 'we therefore hold that recovery for a personal injury suffered on board [an] aircraft or in the course of any of the operations of embarking or disembarking, if not allowed under the Convention, is not available at all." That holding is *all encompassing* . . . . Because the Warsaw Convention does apply to such [personal injury] claims, [plaintiff] has a remedy. Under *Tseng*, it is his *only* one.

*Carey v. United Airlines*, 255 F.3d 1044, 1051 (9th Cir. 2001) (emphasis added). *See also In re: Berg Litigation*, 293 F.3d 1127, 1132 (9th Cir. 2002) ("[T]he [Warsaw] Convention provide[s] the exclusive means for pursuing claims *under [its] provisions*") (emphasis added).

Under *Carey*, the Ninth Circuit interpreted the Convention's "substantive scope" to encompass all personal injury claims suffered onboard an aircraft or during a passenger's embarking or disembarking of the aircraft. 225 F.3d at 1051. Decisions of most other circuits to reach the issue are in accord. *See, e.g., In re: Air Crash at Little Rock Arkansas*, 291 F.3d 503, 516 (8th Cir. 2002) ("The [*Tseng*] Court pointed out that the preemptive effect of the Warsaw Convention is extended only to its "substantive scope." We think the "substantive scope" of preempted claims for personal injury damages is tort law"); *Cruz*, 193 F.3d at 530–2 (finding tort claims were preempted for falling within the Montreal Convention's "substantive scope," but claims for declaratory and injunctive relief were not).

---

provides: 'In the carriage of cargo, any action for damages, however founded, *whether under this Convention or in contract or in tort or otherwise*, can only be brought subject to the conditions and limits of liability set out in this Convention . . . .' (emphasis added). Article 24 expressly contemplates that an action may be brought in contract or in tort. The liability limitation provisions of the Warsaw Convention simply operate as an affirmative defense." *Id.* at 785).

[6] *See, e.g., Motorola, Inc. v. Federal Express Corp.*, 308 F.3d 995, 999 (9th Cir. 2002) ("The Convention preempts state and federal claims falling within its scope"); *Acevedo-Reinoso v. Iberia Lineas Aereas De Espana S.A.*,449 F.3d 7, 11 (1st Cir. 2006) ("[A] carrier is not subject to liability under local law for passenger injuries 'covered by' the Convention"); *Husmann v. Trans World Airlines, Inc.*, 169 F.3d 1151, 1152–3 (8th Cir. 1999) (following the Second and Fifth Circuits to hold that "state law cause[s] of action [are] completely preempted by the Warsaw Convention"); *Cruz v. American Airlines, Inc.*, 193 F.3d 526, 530–1 (11th Cir. 1999) (finding common law tort claims preempted for falling within the Warsaw Convention's "substantive scope").

Plaintiff responds that she is allowed to assert state law claims for negligence in the complaint because "the Montreal Convention provides a defense for defendant American Airlines for claims over 100,000 SDR if they can prove that they were not negligent or committed other wrongful acts or omissions. Montreal Conv., Art. 21(2)" (Opp. 3) (emphasis omitted). Plaintiff is confused. It is true that Article 21(2) provides a method to limit the defendant's liability to no more than 100,000 SDR if the defendant can prove that they were not negligent. But this affirmative defense does not give plaintiff the right to assert independent state law negligence claims in the complaint. *If* defendant asserts the affirmative defense, *then* plaintiff can respond by citing relevant facts to show how defendant was in fact negligent — but plaintiff cannot preemptively assert prohibited claims to rebut a *potential* affirmative defense.

Plaintiff next suggests that "matters of procedure are governed by reference to local law" under Article 33(4) of the Montreal Convention (Opp. 3). But there are no "matters of procedure" addressed by the present motion, so plaintiff's Article 33(4) argument is irrelevant.

Finally, plaintiff claims that under the Montreal and Warsaw Conventions, "local laws will determine the amount of the award. Montreal Conv., Art. 29" (Opp. 3) (emphasis omitted). This argument was also made in *Miller v. Continental Airlines, Inc.*, 260 F. Supp. 2d 931, 938 (N.D. Cal. 2003) (Judge Walker), which clarified that:

> Plaintiffs appear to misapprehend the Supreme Court's opinion in *Zicherman v. Korean Air Lines Co., Ltd.*, 516 U.S. 217 . . . (1996). While the Convention "does not affect the substantive questions of who may bring suit and what they may be compensated for," *id.* at 229, it nevertheless prohibits claims based on local law asserted separately from a claim under the Convention itself. *Zicherman* does not hold that injured parties may assert local claims apart from the treaty itself. As the Supreme Court explained in *Tseng*, "the Warsaw drafters intended to resolve *whether there is liability*, but to leave to domestic law . . . determination of the compensatory damages available to the suitor." 525 U.S. at 170 (emphasis in original) (discussing *Zicherman*). The Convention "permit[s] compensation only for legally cognizable harm, but leave[s] the specification of what harm is legally cognizable to the domestic law applicable under the forum's choice-of-law rules." *Zicherman*, 516 U.S. at 231. Thus, local law plays a vital role in answering those substantive questions and functions in this regard only as a "pass-through" with respect to cognizable damages. *Id.* at 229.

In sum, plaintiff's state law claims for negligence fall within the Montreal Convention's "substantive scope" and are preempted pursuant to *Tseng* and *Carey*. Defendant's motion on

7

this ground is **GRANTED**.  Plaintiff's state law claims for general negligence and motor vehicle negligence are **DISMISSED WITH PREJUDICE**.

### 3. MONTREAL CONVENTION CLAIMS.

The parties agree that the preliminary requirements of Article 1(2) of the Montreal Convention are satisfied, as the incident in question occurred on "international carriage" during international travel on plaintiff's round-trip ticket flight from Florida to the Bahamas. But defendant argues that plaintiff fails to proffer sufficient facts to show that her injury resulted from an "accident," as required under Article 17(1) of the Montreal Convention.  Article 17(1) states:  "The carrier is liable for damage sustained in case of death or bodily injury of a passenger upon condition only that the accident which caused the death or injury took place on board the aircraft or in the course of any of the operations of embarking or disembarking." Article 17 of the Warsaw Convention is materially the same:

> The carrier shall be liable for damage sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by a passenger, if the accident which caused the damage so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking.

Neither the Montreal nor Warsaw Convention defines the term "accident."  But the Supreme Court has defined "accident" as used in Article 17 of the Warsaw Convention. *First*, there must be "an unexpected or unusual event or happening that is external to the passenger." *Air France v. Saks*, 470 U.S. 392, 405 (1985).  *Second*, the injury must not be the product of the passenger's own "internal reaction" to the normal operations inside the airplane cabin, such as loss of hearing caused by an aircraft's normal pressurization system.  *Saks*, 470 U.S. at 395, 406.  *Finally*, there must be "bodily injury" — mental injury that is unaccompanied by physical injury does not qualify as an Article 17 "accident."  *Eastern Airlines, Inc. v. Floyd*, 499 U.S. 530, 534, 552 (1991).  For all events that satisfy the above requirements, the definition of "accident" "should be flexibly applied after assessment of all the circumstances surrounding a passenger's injuries."  *Tseng*, 525 U.S. at 166 n.9.

In the present motion, defendant offers little explanation as to why plaintiff's allegations in the complaint are not sufficient to show an "accident" under *Saks*.  After setting forth the

8

standard for alleging an "accident," defendant states only: "Smith simply alleges that American was negligent (a common law claim) 'due to improper packing, improper checking of overhead bin containers, and fail[ing] to secure overhead bin containers for flight'" (Br. 5–6). Defendant's motion then *ends* — defendant does not explain *why* an alleged injury caused by an airline's negligence would not constitute an Article 17 "accident."

This order holds that plaintiff has pled sufficient facts to show an Article 17 "accident." Plaintiff's complaint states that due to defendant's negligence in improperly packing, checking, and securing overhead compartments for flight, a large bottle of liquid became dislodged, fell, and struck plaintiff in the head (Compl. 4). Defendant does not dispute these facts. The bottle falling from above was both "unexpected and unusual," it was an event that was "external" to plaintiff's body, and it caused plaintiff bodily harm. Thus, the requirements of *Saks* and *Floyd* are satisfied. Moreover, the Ninth Circuit has held that acts of negligence by international air carriers and their agents that result in injuries to passengers qualify as Article 17 "accidents." *See*, *e.g.*, *Gezzi v. British Airways PLC*, 991 F.2d 603 (9th Cir. 1993) (passenger's injury from slipping on water negligently left on steps while embarking aircraft was an Article 17 "accident"); *Prescod v. AMR, Inc.*, 383 F.3d 861 (9th Cir. 2004) (passenger's death from airline's negligent delay in returning luggage containing passenger's prescription inhaler was an Article 17 "accident"); *Husain v. Olympic Airways*, 316 F.3d 829 (9th Cir. 2002) (passenger's death after flight attendant negligently failed to move passenger to different seat due to health-related problems from nearby smoking was an Article 17 "accident"). Furthermore, when faced with the identical scenario of a passenger being hit on the head by a falling bottle of liquid from an overhead compartment, Judge Stearns of the District of Massachusetts concluded that the event constituted an Article 17 "accident":

> What [plaintiff] experienced was certainly an accident in the sense of being an "unexpected or unusual event." While a reasonable passenger would expect some shifting of the contents of an overhead bin, particularly during a turbulent flight, she would not expect, as an ordinary incident of the operation of the aircraft, to be struck on the head by a falling object when the bin above her seat is opened by a fellow passenger. In weighing the vicissitudes of modern day air travel, the hazard of being struck by a falling bottle surely ranks on a par with that of being bumped by a stumbling drunk or a reclining seat, events that have been found to

9

be Article 17 "accidents". . . Airlines provide overhead bins as an amenity for passengers. Airlines have the authority . . . to regulate the number and size of personal articles that passengers are permitted to carry aboard the plane. While passengers are permitted, and in most instances required, to place these items in the overhead bins, this is done under the supervision of the cabin crew who are responsible for securing the binds before takeoff. The attendants may perform this duty well or badly, but they have unquestioned authority to forbid passengers from attempting to stow articles in a fashion that might endanger themselves or other passengers.

*Maxwell v. Aer Lingus Ltd.*, 122 F. Supp. 2d 210, 211, 213 (D. Mass. 2000). This order agrees.[7]

Defendant's motion on this ground is **DENIED**.

## CONCLUSION

For the above reasons, defendant's motion for judgment on the pleadings is **GRANTED IN PART** and **DENIED IN PART**. Leave to amend would be futile.

The hearing set for October 1, 2009, at 8:00 a.m. is hereby **VACATED**.

**IT IS SO ORDERED.**

Dated: September 22, 2009.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

---

[7] Defendant's suggestion that state law negligence claims cannot show an "accident" under the Warsaw Convention makes little sense. The complaint states that defendant is liable under the Warsaw Convention — the fact that plaintiff *also* asserts state law claims does not nullify plaintiff's Warsaw Convention claims. *See Kruger v. United Air Lines, Inc.*, 481 F. Supp. 2d 1005 (N.D. Cal. 2007). Also, defendant improperly cites to *Miller*, 260 F. Supp. 2d at 935, for the proposition that plaintiff does not plead sufficient facts to show an "accident." As already discussed, in this case plaintiff has pled sufficient facts to show an Article 17 "accident." The portion of *Miller* cited by defendant is inapplicable.

10